UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ANGELA WALKER, ET AL.                    CIVIL ACTION

v.                                       NO. 20-3464

JAMES POHLMANN, ET AL.                   SECTION "F"

ORDER AND REASONS

Before the Court is are two motions to dismiss by the
healthcare provider defendants, CorrectHealth, Phillip Nowlin,
Juanita Alexander-Sallier, Donna Baker, Keshonka Rucker, Audrey
Lewis, and Joanna Bartee. For the reasons that follow, the motions
are GRANTED in part as to the federal civil rights claims and
DENIED in part as to the state law claims.

**Background**

Within days of being arrested and detained in the custody of
St. Bernard Parish Jail -- just after an ambulance arrived to
transport him to the hospital -- Marvin Walker died.  This civil
rights lawsuit by his parents followed.

On December 28, 2019, Marvin Walker was arrested and booked
into St. Bernard Parish Jail, which contracts with CorrectHealth

1

St. Bernard, LLC to provide medical and mental health services to those incarcerated at the jail.  Licensed Practical Nurse Donna Baker conducted the jail's medical intake screening process for Walker.  During the 40-minute-long process, Walker reported that he was addicted to opioids and Benzodiazepines (specifically, Xanax). Although Baker noted that Walker did not appear to be under the influence or withdrawing from any drugs or alcohol, she noted that he indicated that he was a daily IV user of heroin ("2 grams daily IV"), cocaine ("4 grams daily"), Xanax (2mg once or twice daily), THC ("5 blunts daily"), and alcohol ("2 pints liquor daily").  At the conclusion of the medical screening process, LPN Baker cleared Walker for placement in general population.

That same day, to address drug withdrawal symptoms, Physician Assistant Juanita Alexander-Sallier prescribed Walker multiple medications; in particular, records incorporated into the complaint indicate that Walker was prescribed 0.1 mg Clonidine HCL, 1-2 mg Lorazepam, 10mg Metoclopramide HLC, Multi-Vit w/ Minerals, and Vitamin B-1 by mouth.  This prescription regimen, to which Ondansteron (Zofran) 4mg tablets twice daily was later added, was approved by Phillip Nowlin, M.D. on December 30, 2019.

Walker received doses of these medication on December 29, 30, 31, and January 1, administered by Keshonka Rucker, Audrey Lewis, and Joanna Bartee; all licensed practical nurses. On January 1, 2020 at 8:05 a.m., due to either opioid or benzodiazepine

withdrawal, Walker was given an injection of Promethazine HCL. Later that day, the other prescribed medications and vitamins were administered. Walker's vitals were checked more than once on December 28, 2019 and then once per day on December 29, 30, and 31.

Walker became unable to keep down his medications. By 4:36 p.m. on December 30, 2019, Walker's nausea and vomiting symptoms were reported to LPNs Baker, Lewis, and Rucker. He was escorted to "medical," where his vitals were obtained and noted as "WNL" (within normal limits).[1] Walker's medications were administered at 5:41 p.m. and then again at 9:16 a.m. and 8:31 p.m. on December 31, 2019; it was at this time that LPN Bartee specifically became aware of Walker's vomiting symptoms.

To address Walker's continued vomiting, he was given one intramuscular injection of anti-nausea medicine on January 1, 2020.[2] This was administered when Walker complained to LPNs Baker and Rucker of vomiting, diarrhea, and an inability to keep anything down. There was also green vomit on his cell floor. Walker's blood pressure was 118/70 and his heart rate was 90; they failed

---

[1] The allegations in the complaint note that Walker was "purportedly administered 25mg/ml of [anti-nausea medication] Phenergan at this point for vomiting but "[t]here is no corroboration [in the medical records] that this Phenergan was ever prescribed."

[2] Walker may have been administered 25mg of Phenergan in his right deltoid on 4:36 p.m. on December 30, 2019; it is alleged that the medical records are at best inconsistent on this fact.

to document his temperature.   Baker and Rucker advised PA Alexander-Sallier of Walker's condition, and she ordered Phenergan 50mg IM x 1 dose now and Ondansetron (Zofran) 4mg po BID x 3 days. No one recommended or referred Walker to the hospital or to a medical doctor.

Later that night around 10:10 p.m., additional medications were administered to Walker by LPN Rucker. More than eight hours later at 6:44 a.m. on January 2, 2020, LPN Rucker was summoned to Walker's cell as his condition worsened: he was reportedly "dangling at the side of [his] bunk" and he complained of "locking up."  Walker complained to LPN Rucker of vomiting and diarrhea. LPN Rucker observed "flexion of inmates distal digits and extremities" and that his skin was cold and clammy.  She advised PA Alexander-Sallier, who ordered Walker's immediate transfer to the hospital.  At 6:46 a.m., the ambulance and emergency medical services arrived.  Walker was placed in the ambulance bound for the St. Bernard Parish Hospital.  But it was too late.  While in the ambulance, Walker's pulse was lost.  For 15 to 20 minutes, EMS performed CPR.  Walker was dead upon his arrival to the hospital at 7:10 a.m.

Believing that Walker's heart failed as he was being placed into the ambulance much too late, Walker's parents, Angela and Roosevelt Walker, sued the following defendants in their official and individual capacities: CorrectHealth St. Bernard LLC (CHSB),

4

Sheriff James Pohlmann, Dr. Phillip Nowlin, and PA Juanita Alexander-Sallier. Additionally, the Walkers sued LPN Donna Baker, LPN Audrey Lewis, LPN Keshonka Rucker, LPN Joanna Bartee, Deputy Scott Vincent, Deputy D'Antoni, Deputy Christopher Hammel, and Deputy Ashley Blasio, in their individual capacities. Seeking to recover compensatory and punitive damages along with attorneys' fees, the plaintiffs present four causes of action. First, the plaintiffs allege that the defendants acted in concert to deprive Walker of his constitutional right to a reasonably safe and secure place of detention, medical care, protection from cruel and unusual punishment, and due process. Second, the plaintiffs allege that Pohlmann, CHSB, and Nowlin (with deliberate indifference) created customs and policies that caused the deprivation of Walker's constitutional rights. Third, the plaintiffs allege that CHSB, Nowlin, and Alexander-Sallier acted with deliberate indifference by failing to adequately supervise and train LPNs Baker, Lewis, Rucker, and Bartee. Fourth, the plaintiffs allege that all defendants acted negligently with respect to Walker throughout the course of Walker's time in the jail.

The plaintiffs allege that Walker's death was preventable. They allege that Dr. Nowlin and PA Alexander-Sallier failed to prescribe proper medications to address Xanax withdrawal, which can be fatal if not properly treated by slowly reducing over time

the patient's level of benzodiazepine, which was not done here.[3] It is further alleged that Walker was given only one injection of anti-nausea medication, despite the fact that he could not keep down his orally-administered medications. Walker "was very sick the last 3 days of his life": he was showing serious signs of drug withdrawal at the morning pill call on December 29, 2019 (he was sick, weak, and could not eat); he was vomiting "all over" on December 30 at 4:36 p.m. and was purportedly administered anti-nausea medication, though this was not confirmed; and although LPN Lewis noted "will continue to monitor," it is alleged that Walker was not adequately monitored (he was merely administered his meds on December 30 and 31 and had his vitals taken on December 31).[4] At pill call, it is alleged, Walker was hunched over and requested to be taken to the hospital.  According to the complaint, a witness observed Walker "at least twice...covered in his own vomit, feces and urine" and urged that Walker be taken to the hospital but the deputy and LPN defendants ignored the witness's requests. Sheriff Pohlmann and Deputy Ashley Blasio answered the complaint; as have

---

[3] Alternatively, it is alleged that LPN Baker failed to advised Dr. Nowlin and PA Alexander-Sallier of Walker's daily Xanax use and that this failure was deliberately indifferent to Walker's serious medical needs.

[4] LPN Lewis should have immediately referred Walker to a doctor or medical care professional, it is alleged. If she did notify Dr. Nowlin or PA Alexander-Sallier, and they failed to order his transfer to the hospital for treatment of Xanax withdrawal, then it is alleged that they were deliberately indifferent to his serious medical need.

Deputy Paul Dantoni, Deputy Christopher Hammel, and Deputy Scottie Vinson.

Now the healthcare provider defendants -- CHSB, Nowlin, Alexander-Sallier, Baker, Lewis, Rucker, and Bartee -- move to dismiss the plaintiffs' claims against them for failure to state a claim.

I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997)(quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)(citing Fed. R. Civ. P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light

most favorable to the plaintiffs." See Thompson v. City of Waco, Texas, 764 F.3d 500, 502 (5th Cir. 2014)(citing Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5th Cir. 2012)(en banc)). But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. Id. at 502-03 (citing Iqbal, 556 U.S. at 678).

To survive dismissal, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 556 U.S. at 678)(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiffs pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of

the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (citing Twombly, 550 U.S. at 557).  "[A] plaintiffs' obligation to provide the 'grounds' of his 'entitle[ment] to relief'" thus "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

Finally, "[w]hen reviewing a motion to dismiss, a district court 'must consider the complaint in its entirety, as well as other sources ordinarily examined when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011)(quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).  If the Court considers materials outside of the pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56.  See Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004); see also Fed. R. Civ. P. 12(d).

II.

The healthcare provider defendants, CHSB and its employees sued in their individual and official capacities, move to dismiss the plaintiffs' claims.  The plaintiffs allege that CHSB and its employees violated Walker's civil rights, specifically, his Fourteenth Amendment right to medical care and protection from harm while detained at St. Bernard Parish Jail.  The plaintiffs pursue a Monell claim against CHSB, Nowlin, and Alexander-Sallier, as well as episodic-act-or-omission (deliberate indifference) claims against the individual CHSB employee-defendants.  In addition to the federal civil rights claims, the plaintiffs also seek to recover for intentional torts as well as medical malpractice (and, as to CHSB, vicarious liability) under state law; the medical malpractice claims, which arise from the same factual predicate underlying the federal civil rights claims, have been submitted to a state medical review panel, as state law requires.

CHSB and its employees move to dismiss the plaintiffs' civil rights claims for failure to state a claim and move to dismiss the medical malpractice claims pending exhaustion by the state medical panel review.  The Court summarizes the applicable federal civil rights law to determine whether the plaintiffs have stated civil rights claims against the healthcare defendants before turning to

10

address the defendants' (undisputed) contention that the state law medical malpractice claims are premature.

*A.*

Title 42, United States Code, Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law; it provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

Section 1983 was created to deter state actors from depriving individuals of their guaranteed rights and to provide an avenue for relief if the deterrence should fail. Wyatt v. Cole, 504 U.S. 158, 161 (1992). Because § 1983 merely provides a remedy for designated rights, rather than creating substantive rights, "an underlying constitutional or statutory violation is a predicate to liability." Harrington v. Harris, 118 F.3d 359, 365 (5th Cir. 1997)(citation omitted).  To establish § 1983 liability, the plaintiffs must satisfy three elements:

> (1) deprivation of a right secured by the U.S. Constitution or federal law,
> (2) that occurred under color of state law, and
> (3) was caused by a state actor.

Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

11

*B.*

The § 1983 legal framework applicable to a plaintiff's allegations that custodial medical officials failed to render medical care or provide protection from harm is dictated by the nature of the complainant (convicted prisoner or pretrial detainee?), the nature of the challenged conduct (condition-of-confinement or episodic-act-or-omission?), and the sort of defendant sued (individual official or municipality?). In this custodial death case, a pretrial detainee's parents challenge episodic acts or omissions of both individual defendants and a "municipal" defendant (the municipality's contractual medical service provider).[5]

The Eighth Amendment's prohibition against cruel and unusual punishment is the constitutional source of liability where an official demonstrates deliberate indifference to a convicted prisoner's serious medical needs, whereas pretrial detainees whom have not yet been convicted of a crime and therefore may not be punished "look to the procedural and substantive due process

_____

[5] It appears from the complaint's allegations that Walker was a pretrial detainee; however, the Court observes that the plaintiffs in their opposition papers indicate that "[i]t Is not known at this time whether following this arrest he was rearrested while in SBPJ for any outstanding warrants based on a prior conviction. This information would be necessary in order to confirm whether this is an Eighth or Fourteenth Amendment claim." The parties appear to agree that this potential distinction is not material to resolving the pending motions.

guarantees of the Fourteenth Amendment to ensure provision of these same basic needs." See Jacobs v. West Feliciana Sheriff's Dep't, 228 F.3d 388, 393 (5th Cir. 2000); see also Baughman v. Hickman, 935 F.3d 302, 306 (5th Cir. 2019)("the Fourteenth Amendment case law concerning pretrial detainees [is based] on the Supreme Court's Eighth Amendment precedent concerning prisoners."); Cadena v. El Paso County, 946 F.3d 717, 727 (5th Cir. 2020)(noting that "[t]he standard is the same as that for a prisoner under the Eighth Amendment"); Bell v. Wolfish, 441 U.S. 520, 535 (1979)(observing that pretrial detainees have not been convicted of a crime such that no punishment of any kind is permitted).  "The Fourteenth Amendment guarantees pretrial detainees a right 'not to have their serious medical needs met with deliberate indifference on the part of the confining officials.'" Dyer v. Houston, 964 F.3d 374, 380 (5th Cir. 2020)(quoting Thompson v. Upshur Cty., Tex., 245 F.3d 447, 457 (5th Cir. 2001)).  Among the Fourteenth Amendment rights guaranteed to pretrial detainees are the right to medical care and the right to protection from harm.  See Garza v. City of Donna, 922 F.3d 626, 632 (5th Cir. 2019)(citations omitted).

As to the nature of the challenged conduct informing scrutiny of a § 1983 deliberate indifference claim, "[a] pretrial detainee may prove a constitutional violation either by demonstrating an unconstitutional condition of confinement or by demonstrating an unconstitutional episodic act or omission." Cadena, 946 F.3d at

727 (citation omitted).  When a plaintiff pursues an episodic-acts-or-omissions theory, he seeks to redress harms arising from "the particular act or omission of one or more officials," rather than conditions-of-confinement harms, which result directly from an institution's pervasive unconstitutional policy or practice (such as overcrowding, excessive heat, the use of disciplinary segregation).  See Garza, 922 F.3d at 632 and 633 n.3 (citations omitted).

The plaintiffs' theory here appears limited to challenging CHSB's and its employee's episodic acts or omissions in treating, medicating, or monitoring Walker and, in doing so (or failing to do so), failing to provide adequate medical care and failing to protect him from harm.  In considering such a theory, the Court must "employ different standards depending on whether the liability of the individual defendant or the municipal defendant is at issue."  Baughman, 935 F.3d at 307 (citation omitted).  Regardless of whether municipal or individual liability is at stake, the plaintiff must show that officials acted with deliberate indifference; "an extremely high standard to meet."  Id. (citation omitted).  This "wanton" or "recklessness" showing requires that "(1) the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and (2) he must also draw the inference."  Id. (citations omitted); Dyer, 964 F.3d at 380.  Municipal "as opposed to

individual liability has the additional requirement that the 'violation resulted from a [municipal] policy or custom adopted and maintained with objective deliberate indifference.'" Baughman, 935 F.3d at 307 (quoting Garza, 922 F.3d at 634).[6]

As for the "substantial risk of serious harm" component of the first element, the Fourteenth Amendment guarantees that pretrial detainees have a right "not to have their serious medical needs met with deliberate indifference." Dyer, 964 F.3d at 380. A serious medical condition or need is equivalent to objective exposure to a substantial risk of harm; such a condition or need is "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is

---

[6] Although there is some confusion in the case literature, the Fifth Circuit has recently clarified that -- no matter whether official or municipal liability is at issue -- there is no third requirement that the official subjectively intend the particular harm to occur. Dyer, 964 F.3d at 380; Garza, 922 F.3d at 635-36. The Court observes that there is another area of disagreement or confusion concerning the standard for deliberate indifference of pretrial detainees: whether the standard is subjective (the defendants knew of and disregarded a substantial risk of harm) or objective (the defendants knew or should have known of the risk of harm). Compare Alderson v. Concordia Parish Correctional Facility, 848 F.3d 415, 419-20 (5th Cir. 2017)(pretrial detainees must show subjective deliberate indifference) with Kingsley v. Hendrickson, 576 U.S. 389 (2015)(holding that an objective standard applied to whether force used against a pretrial detainee was excessive). The Court is bound to follow Alderson and other recent Fifth Circuit case literature specific to the serious medical needs context. See, e.g., Baughman, 935 F.3d at 307 (applying subjective deliberate indifference test to pretrial detainee's claim that certain medical and other officials acted with deliberate indifference towards his serious medical needs).

required." Carlucci v. Chapa, 884 F.3d 534, 538-40 (5th Cir. 2018)(quoting Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006)); Cadena, 946 F.3d at 727-28.

"Medical treatment that is merely unsuccessful or negligent does not constitute deliberate indifference, 'nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances.'" See Arenas v. Calhoun, 922 F.3d 616, 620 (5th Cir. 2019)(citations omitted)(analogous Eighth Amendment convicted prisoner context). Thus, a plaintiff "must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" See id. at 620-21 (citations omitted). To be sure, "[p]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer v. Brennan, 511 U.S. 825, 844 (1994)(considering analogous Eighth Amendment context).

As to the defendant's challenged conduct, it must be egregious: "[d]eliberate indifference is an extremely high standard to meet." Dyer, 964 F.3d at 380. It "cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." Id. at 381 (citations omitted). Deliberate indifference "requires that the defendant act with

16

'something more than negligence' but 'less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'"  Cadena, 946 F.3d at 728 (citation omitted).  For example, "the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment,' which fails to give rise to a deliberate-indifference claim."  Dyer, 964 F.3d at 381 (citation omitted).  Similarly, "mere disagreement with one's medical treatment" and "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice" fall short of deliberate indifference.  See id.  To act with deliberate indifference, an official must "know[] of and disregard an excessive risk to inmate safety."  Garza, 922 F.3d at 635 ("It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.") (citations omitted).

### III.

#### *A.*

Before reaching the substantive heart of the defendants' motion to dismiss, the Court takes up two preliminary issues.  The defendants present two grounds for dismissal, which are uncontested by the plaintiffs.  First, the plaintiffs concede that the Monell claims against Phillip Nowlin and Juanita Alexander-

Sallier are redundant and should be dismissed. Second, the plaintiffs concede that there is no vicarious liability under 42 U.S.C. § 1983.  Indeed, § 1983 does not create supervisory or *respondeat superior* liability.  See Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002).  Insofar as the plaintiffs seek to hold CHSB vicariously liable for its employees' alleged constitutional violations, it is undisputed that this claim must be dismissed for failure to state a claim.

*B.*

The Court addresses the sufficiency of the allegations regarding the medical defendant officials' individual liability before assessing the allegations concerning CHSB's Monell liability.[7]

---

[7] A medical professional who treats a pretrial detainee on behalf of a governmental entity acts under color of state law for the purposes of § 1983. See Sanchez v. Oliver, 995 F.3d 461, 466 (5th Cir. 2021)(citing West v. Atkins, 487 U.S. 42, 55-56 (1988)). Invoking West v. Atkins, 487 U.S. 42, 55-56 (1988) and Perniciaro v. Lea, 901 F.3d 241, 251 (5th Cir. 2018), this Court has so determined.  See Phoenix v. Lafourche Parish Government, No. 19-13004, 2021 WL 184909, at *9 and n.10 (E.D. La. Jan. 19, 2021)(citing Phoenix v. Lafourche Parish Government, No. 19-13004, 2020 WL 3269114, at *8 (E.D. La. June 17, 2020)).  Although no such defense has been asserted, the Court further observes that the Fifth Circuit recently joined other Circuits to hold that there is no qualified immunity defense available for healthcare providers employed by a large, for-profit company contracted by a government entity to provide care in a correctional setting.  See Sanchez, 995 F.3d at 472.

CHSB employees Phillip Nowlin, Juanita Alexander-Sallier, Donna Baker, Keshonka Rucker, Audrey Lewis, and Joanna Bartee are sued in their individual capacities. In moving to dismiss the plaintiffs' § 1983 deliberate indifference claims, they advance two main arguments. First, they contend that plaintiffs' allegations (which are based on and incorporate Walker's CHSB medical records) rebut plaintiffs' contention of deliberate indifference and show that Nowlin, Alexander-Sallier, Baker, Rucker, Lewis, and Bartee treated and monitored Walker and were attentive to his medical needs. Second, they contend that neither negligent treatment of Walker nor plaintiffs' disagreement with how Walker was treated amount to a constitutional violation. The plaintiffs counter that the medical records support the alternative theories advanced in the complaint and that the plaintiffs sufficiently allege that the individual CHSB defendants documented Walker's withdrawal symptoms but failed to treat him.

As previously summarized, pretrial detainees like Walker have a Fourteenth Amendment right to be protected from impermissible punishment like denials of, or delays in, providing medical care for serious medical needs. Thompson, 245 F.3d at 457 (The Fourteenth Amendment guarantees pretrial detainees a right "not to have their serious medical needs met with deliberate indifference on the part of the confining officials."). In considering the sufficiency of the plaintiffs' deliberate indifference

allegations, the Court considers whether the plaintiffs have alleged facts (presumed true) that plausibly establish that (1) the CHSB employees were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) the CHSB employees actually drew that inference. <u>Domino v. Texas Dep't of Criminal Justice</u>, 239 F.3d 752, 755 (5th Cir. 2001) (quoting <u>Farmer</u>, 511 U.S. at 837).[8]   Mindful that "[d]eliberate indifference is an extremely high standard to meet," <u>id.</u> at 756, the Court considers whether the plaintiffs' factual allegations plausibly suggest that the healthcare provider defendants should have provided additional treatment or rise to a level beyond negligent or grossly negligent responses to Walker's serious medical needs.

If the allegations indicate that the healthcare provider defendants "refused to treat [Walker], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs[,]'" <u>Arenas</u>, 922 F.3d at 620-21 (citations omitted), then the plaintiffs may pursue their deliberate indifference claims.   On the other hand, if the alleged facts indicate a negligent response to Walker's medical needs, then the

---

[8] A third element -- that the official "subjectively intended that harm occur" – additionally has been considered by some panels, but improperly so, according to recent Fifth Circuit authority.   <u>See</u> <u>Dyer v. Houston</u>, 964 F.3d 374, 380 (5th Cir. 2020).

plaintiffs fail to state a plausible deliberate indifference claim.

As put plainly by the Fifth Circuit Pattern Jury Instructions, to recover damages for such a violation, the plaintiffs must prove by a preponderance of the evidence that: (1) the plaintiff was exposed to a substantial risk of serious harm; (2) the defendant displayed deliberate indifference to that risk; and (3) the deliberate indifference harmed the plaintiff. If a reasonable person would view Walker's withdrawal symptoms as sufficiently serious based on all alleged circumstances, then the first requirement is met. See id. Proof of egregious conduct is required to meet the second element: the plaintiffs must prove that the defendant knew of and disregarded an excessive risk to Walker's health due to withdrawal. See id. (noting the two-prong test plaintiffs must prove: (1) the defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed; and (2) the defendant actually drew that inference). Mere disagreement with the type, amount, or timing of medical treatment is insufficient. Id. For an episodic-act-or-omission claim "relying on an alleged denial or delay of medical care," the plaintiffs may prove "deliberate indifference by demonstrating that an official 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for

any serious medical needs.'"  Baughman v. Hickman, 935 F.3d 302

309 (5th Cir. 2019) (quoting Perniciaro v. Lea, 901 F.3d 241, 258

(5th Cir. 2018)).  Each defendant's alleged conduct is examined

individually.  Id. (citation omitted).

Viewing the facts alleged in the complaint in the light most

favorable to the plaintiffs, the plaintiffs alleged facts which,

if proved, indicate that certain individuals were aware that Walker

had serious medical needs and knew that he was experiencing

withdrawal symptoms.  Walker presented a serious medical condition

and need for treatment. Walker was a known drug user and began

exhibiting signs of withdrawal while in custody.  Indeed, the

plaintiffs' factual allegations are predicated in part on the CHSB

medical records, which indicate that Walker was exhibiting

withdrawal symptoms including nausea and vomiting. These alleged

facts indicate that Walker had a serious medical condition or

objective exposure to a substantial risk of harm. See Carlucci v.

Chapa, 884 F.3d 534, 538-40 (5th Cir. 2018); Cadena v. El Paso

County, 946 F.3d 717, 727-28 (5th Cir. 2018).

The defendants focus their challenge on whether the

plaintiffs allege a constitutional deprivation under § 1983

indicating that Walker's serious medical needs were met with

deliberate indifference.  Accepting the complaint's allegations as

true, CHSB personnel screened Walker, provided medical treatment

and medications to assist in alleviating drug withdrawal symptoms,

including Conidine, Lorazepam, Metoclopramide, and Odansetron (Zofran); his vitals were assessed daily and found to be within normal limits; and an anti-nausea injection was administered on January 1. That the medical records anchoring the complaint's allegations indicate that Walker received medications and treatment for withdrawal shows the absence of deliberate indifference, the defendants contend.[9] The Court agrees; the facts alleged fall short of alleging actionable deliberate indifference on the part of Phillip Nowlin, Juanita Alexander-Sallier, Donna Baker, Audrey Lewis, Keshomka Rucker, and Joanna Bartee. For instance, Nowlin and Alexander-Sallier are alleged to have failed to give proper medication best suited to handle Xanax withdrawals and to transfer Walker to the hospital at an appropriate time. Plaintiffs do not allege that Nowlin and Alexander-Sallier refused to give Walker medication, or that they ignored him or refused to treat him. Similarly, plaintiffs claim that Donna Baker, Audrey Lewis, Keshomka Rucker, and Joanna Bartee failed to adequately monitor Walker, wrongly allowed him to be placed in general population, and failed to refer him to a doctor or the hospital

---

[9] Countering the plaintiffs' theory that no medication administered addressed Walker's Xanax withdrawal, the defendants point out that -- according to the medical records and complaint's allegations -- Walker was administered Lorazepam, which like Xanax, is a Benzodizepine. The plaintiffs do not dispute this; indeed, it is the plaintiffs whom allege that Lorazepam was administered among other medications to treat Walker's withdrawal symptoms.

before his condition became critical.  Once again, plaintiffs fail to allege any facts that would suggest deliberate indifference. They fail to allege any facts that suggest Baker, Lewis, Rucker, and Bartee refused to monitor Walker or that they refused to refer him to a doctor or hospital after they knew his condition had become critical.  Plaintiffs fail to allege any facts that could trigger the standard of deliberate indifference embraced by the case literature.  Instead, the plaintiffs speculate that facts indicative of deliberate indifference might exist, and they rely on facts derived from the medical records; facts that indicate Walker was treated and monitored for drug withdrawal.[10]  At best, the plaintiffs allege that the medical care defendants were negligent in treating Walker's acute withdrawal symptoms or in failing to summon critical care sooner.  The allegations simply fail to support a plausible deliberate indifference theory. Disagreement as to Walker's treatment fall short of stating a claim for deliberate indifference.

The facts alleged do not indicate that the healthcare provider defendants "refused to treat [Walker], ignored his complaints,

---

[10] Indeed, the facts alleged are based on medical records, which indicate that multiple medications were administered to Walker, Walker was monitored, and Walker's vitals were obtained on December 29, December 30, twice on December 31, and on January 1; and found to be within normal limits on these occasions.  And that anti-nausea medication was administered in an attempt to address Walker's nausea.

intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."   See Domino, 239 F.3d at 756 (citation omitted).   Because the plaintiffs fail to allege facts showing the defendants deliberately disregarded known risks, refused to treat Walker, ignored his complaints, or engaged in similar conduct evincing a wanton disregard for Walker's serious mental health needs, the plaintiffs' claims against Phillip Nowlin, Juanita Alexander-Sallier, Donna Baker, Audrey Lewis, Keshomka Rucker, and Joanna Bartee must be dismissed.[11]

*C.*

CHSB moves to dismiss the plaintiffs' claim against it as an entity.   Whether the plaintiffs state a plausible § 1983 claim against CHSB is analyzed in accordance with the Monell framework.

The Court has already observed (and the plaintiffs agree) that there is no *respondeat superior* liability under § 1983; no entity may be liable simply because it employs a person who has violated the plaintiffs' rights.   As a private entity that acts

---

[11] The defendants also seek to dismiss the plaintiffs' punitive damages claims.   The plaintiffs have failed to offer legal support for their request for punitive damages as against CHSB or any individual medical care defendant; there are no factual allegations indicating that any defendant was motivated by evil motive or intent.   Nor do the plaintiffs identify any state law statutes permitting them to recover punitive damages in connection with the state law negligence claims.

under color of state law in contracting with the municipality to provide medical services to detainees, CHSB is treated as a municipality for the purposes of § 1983 claims.[12]

The test for establishing municipal liability in an episodic-act-or-omission case is settled:

> [A] plaintiffs must show (1) that the municipal employee violated [the pretrial detainee's] clearly established constitutional rights with subjective deliberate indifference; ... (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference[; and (3)] either written policy statements, ordinances, or regulations or a widespread practice that is so...well-settled as to...fairly represent[] municipal policy that was the moving force behind the violation.

Cadena, 946 F.3d at 727 (citations, internal quotations omitted); Garza, 922 F.3d at 637 ("[T]o establish municipal liability based on an employee's episodic act or omission, a plaintiffs must show the violation 'resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference.'").

To survive a motion to dismiss, the complaint must describe an official policy or custom and its relationship to the underlying constitutional violation with specific facts. Balle v. Nueces Cty., Texas, 952 F.3d 552, 559 (5th Cir. 2017)(quoting Spiller v.

---

[12] Where private entities act in the place of a municipality, Monell applies. See, e.g., Shields v. Illinois Dep't of Corrs., 746 F.3d 782, 786 (7th Cir. 2014); Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1139 (9th Cir. 2012); Lyons v. Nat'l Car Rental Sys., Inc., 30 F.3d 240, 246 (1st Cir. 1994); Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997).

Texas City, Police Dept., 130 F.3d 162, 167 (5th Cir. 1997)). Sufficient pleadings include factual allegations that, when reviewed, allow a court to reasonably conclude that policies or customs exist and they were the "moving force" behind the employee's deliberate indifference. Id. Additionally, isolated conduct by an entity employee is insufficient; plaintiffs must allege prior similar incidents indicating a pattern of conduct. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).

CHSB contends that the plaintiffs fail to state a viable Monell claim because the facts alleged do not establish deliberate indifference to Walker's medical needs; the plaintiffs' allegations regarding failure to monitor, train, or supervise are merely conclusory; and plaintiffs fail to include any other facts indicating an official policy or custom. As discussed above, the Court finds that the plaintiffs failed to allege facts that, if true, could plausibly state a claim for deliberate indifference. Absent an underlying constitutional violation, there can be no § 1983 "municipal" or Monell liability against CHSB.

The Court also agrees with the defendants' position that the plaintiffs' allegations regarding failure to monitor, train, or supervise are merely conclusory; and plaintiffs fail to include any facts indicating an official policy or custom. The plaintiffs come closest to alleging a policy when they allege that "it was common practice at the time of Walkers death for CorrectHealth,

27

Dr. Nowlin, PA Alexander-Sallier, and the Defendant LPNs to fail to implement Clinical Opiate Withdrawal Score (COWS) protocol and other detoxification protocol for drug-addicted inmates" and that CorrectHealth had deficient policies related to the care and observation of prisoners in drug withdrawal, specifically Xanax withdrawal.  What is lacking is content, such as allegations concerning what the COWS protocol requires and its relationship to the alleged constitutional violation.

Absent an allegation of a formal policy statement announced by a policymaker, any Monell liability must be anchored to a persistent widespread practice so common and well-settled that it fairly represents CHSB policy.  To do this, the plaintiffs must allege in the complaint "sufficiently numerous prior incidents." McConney v. City of Houston, 863 F.2d 1180, 1184 (5th Cir. 1989). These prior incidents must be sufficiently similar incidents pointing to the specific violation in question. Id. Additionally, "prior indications cannot simply be for any and all bad or unwise acts[.]" See Peterson v. City of Fort Worth, Tex., 588 F.3d 838, 850-51 (5th Cir. 2009)(citation, internal quotations omitted). The plaintiffs' allegations that CHSB failed to follow certain protocols when dealing with Walker's withdrawal lacks factual content and do not implicate a custom to ignore those protocols. Nor do the plaintiffs provide any factual allegations of prior, sufficiently similar incidents suggesting a failure to follow

28

withdrawal protocols.  Simply saying there is a policy or custom, without concrete facts in support, does not advance a plausible Monell claim.  Allegations that CHSB had policies of "insufficient staffing and failure to monitor" are conclusory.  Plaintiffs' theory that CHSB staff allegedly failed to frequently monitor Walker, therefore CHSB must be understaffed, is speculative absent supporting factual allegations concerning a systemic issue within CHSB.

Finally, the plaintiffs' failure to train theory fails on the conclusory facts alleged.  The plaintiffs fail to identify a particular deficiency in the training program that is related to Walker's constitutional injury.  "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy[.]" Connick v. Thompson, 563 U.S. 51, 61 (2011).  But, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Id. (citation omitted).  The plaintiffs must allege a pattern of violations in addition to how a particular training program is defective.  See Estate of Davis v. City of N. Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005).  Absent notice that a training course is insufficient, it cannot be said that an entity has *deliberately* chosen a particular training program; thus, it is the entity's "policy of inaction in light of notice

that its program will cause constitutional violations [that] is the functional equivalent of a decision by the city itself to violate the constitution." Connick, 563 U.S. at 61-62 (citing City of Canton v. Harris, 489 U.S. 378, 395 (1989)). Here, the plaintiffs fail to allege how CHSB training was defective, nor do they allege a pattern of repeat violations.[13]

IV.

Finally, CHSB and its employees move to dismiss the plaintiffs' state-law negligence claims as premature. The plaintiffs concede that the medical malpractice and vicarious liability claims require exhaustion before the state medical review panel, submit that the panel is underway, and request that the case be stayed pending completion of the medical review panel. The Court agrees and has consistently stayed civil rights litigation pending completion of a pending medical review panel. See Evans v. Lopinto, No. 18-8972, 2019 WL 2995870, at *7 (E.D. La. July 8, 2019)(Brown, C.J.)(where plaintiffs alleged that various law enforcement and medical defendants' deliberate indifference led to a pretrial detainee's death by suicide, a stay of the entire litigation pending the conclusion of the medical

---

[13] For example, if one is to infer that CHSB personnel were not trained in drug-withdrawal protocol (or that they were but refused to follow it), no supporting facts are alleged to permit this conclusion.

review panel furthered the interest of judicial economy); see also Phoenix v. Lafourche Parish Government, No. 19-13004, 2021 WL 184909, at *3, *10 (E.D. La. Jan. 19, 2021)(where the plaintiffs alleged that defendants' deliberate indifference led to a detainee's suicide, this Court found that a stay was appropriate pending completion of the medical review panel).

So, too, here.  Each of the plaintiffs' claims, including the state-law medical malpractice claims, arise out of Walker's death while he was detained at St. Bernard Parish Jail under the defendants' supervision and in the defendants' care.  Discovery will apply to all interrelated claims.  Additionally, the medical review panel's determination may be admissible (though not conclusive) at any trial of this matter.  See Seoane v. Ortho Pharmaceuticals, Inc., 660 F.2d 146, 149 (5th Cir. 1981).  A stay of this case pending the outcome of the medical review panel is warranted.

***

Opportunities to amend deficient complaints are freely given. The Court simply cautions counsel that facts must be alleged that plausibly could indicate that the delay in administering the anti-nausea injection(s), or the failure to appreciate (or delay in realizing) that Walker was not metabolizing the medications due to his untreated nausea, or the delay in summoning critical care, was

deliberate on the part of one or more medical providers; that the course of treatment alleged evinced a wanton disregard for Walker's serious medical needs.  In the context of alcohol withdrawal, the Fifth Circuit has indicated in dicta that "ignoring the dangers of alcohol withdrawal and waiting for a 'manifest emergency'" might constitute deliberate indifference in certain circumstances.  See Thompson v. Upshur Cnty., 245 F.3d 447, 458 (5th Cir. 2001); cf. Grogan v. Kumar, 873 F.3d 273, 279-80 (5th Cir. 2017)(vacated summary judgment for defendants where inmate, who had attempted suicide by overdosing on medication, had lain on the floor for two days "not able to eat, drink, [or] walk, and barely able to talk" and had "received no help" but instead was told by a nurse that she "didn't care" and another defendant to "sleep it off.")  On the other hand, "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."  Freeland v. Tarrant Cnty., Texas, 789 Fed.Appx. 406, 409 (5th Cir. 2019)(unpublished)(quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)).  Such is the quandary presented to plaintiffs' counsel if amendment is pursued.

    For the foregoing reasons, IT IS ORDERED: that the medical defendants' motions to dismiss are GRANTED in part as to the federal civil rights claims and DENIED in part as to the state law claims; the plaintiffs' federal civil rights claims against Alexander-Sallier, Baker, CHSB, Lewis, Nowlin, Rucker, and Bartee

are hereby dismissed.   IT IS FURTHER ORDERED: that the case is hereby STAYED and closed administratively, for statistical purposes, pending the outcome of the Louisiana medical review panel.   The case may be reopened upon a motion by the plaintiffs.

New Orleans, Louisiana, June 23, 2021

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE